Joseph A. Larson, Esq.
jlarson@joelarsonlaw.com
**JOSEPH A. LARSON LAW FIRM, PLLC**
310 4th Avenue South, Suite 5010
Minneapolis, MN 55415
Telephone: (612) 206-3704
Facsimile: (612) 284-8716

Dana R. Vogel, Esq.*
drv@mccunewright.com
Christopher M. Sloot, Esq.*
cms@mccunewright.com
**McCUNE LAW GROUP,**
**McCUNE WRIGHT AREVALO**
**VERCOSKI KUSELWECK BRANDT, APC**
2415 E. Camelback Rd., Ste. 850
Phoenix, AZ 85016
Telephone: (520) 210-5558
Facsimile: (909) 557-1275

*Attorneys for Plaintiff*
*\*Application for pro hac forthcoming*
Additional Counsel Listed on Signature Page

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| S.M.O. on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Mayo Clinic; and MMSI, Inc., d/b/a Medica Health Plan Solutions,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

**COMPLAINT**

TABLE OF CONTENTS

*Page*

I     INTRODUCTION .................................................................................... 1

II    PARTIES ............................................................................................... 2

III   JURISDICTION AND VENUE ............................................................. 3

    A.   Subject-Matter Jurisdiction ............................................................. 3

    B.   Personal Jurisdiction ....................................................................... 3

    C.   Venue ............................................................................................... 3

IV    GENERAL ALLEGATIONS ................................................................. 3

    A.   The Defendants' Roles and Responsibilities.................................... 3

    B.   Medica's Non-Network Provider Reimbursement Amount.................... 4

    C.   Medica Fails to Provide Proper Notice of Out-Of-Network
        Reimbursement ............................................................................... 6

    D.   Medica Fails to Provide Adverse Benefits Determinations Within the
        Timeframe Mandated By ERISA ................................................... 9

    E.   Defendants Provide Materially False Information Regarding Available
        Providers.......................................................................................... 9

V     PLAINTIFF'S ALLEGATIONS ........................................................... 10

VI    CLASS ACTION ALLEGATIONS ....................................................... 16

VII   CAUSES OF ACTION .......................................................................... 19

    COUNT I: Violations of RICO: 18 U.S.C. § 1962(c) ...................................... 19

    COUNT II: Claim for Underpaid Benefits Under Group Plans Governed by
    ERISA.................................................................................................. 25

    COUNT III: Failure to Provide Accurate EOB and SPD and Request for
    Declaratory and Injunctive Relief.......................................................... 26

    COUNT IV: Violation of Fiduciary Duties of Loyalty and Due Care and
    Request for Declaratory and Injunctive Relief ................................... 27

COUNT V: Violation of Fiduciary Duties of Full and Fair Review and
Request for Declaratory and Injuctive Reflief.................................................. 29
COUNT VI: Claim for Equitable Rlief to Enjoin Acts and/or Practices ......... 30
COUNT VII: Claim for Other Appropriate Equitable Relief.......................... 31
JURY TRIAL DEMAND ........................................................................ 33

## I     <u>INTRODUCTION</u>

Plaintiff S.M.O. is an employee of Mayo Clinic who brings this action on behalf of themself and all other similarly situated individuals against defendants Mayo Clinic ("Mayo") and MMSI, Inc., d/b/a Medica Health Plan Solutions ("Medica") and alleges the following:

1.      Plaintiff S.M.O. files this class action on behalf of themself and all those similarly situated (the "Plaintiff Class") whose claims for benefits have been systematically underpaid by Medica and who owe money or have paid out-of-pocket all or a portion of the difference between what their insurance *should* have covered and what it actually paid.

2.      Plaintiff Class sought health care from licensed, accredited, treatment providers. Plaintiff is a member of active health insurance policies offering out of network benefits that Mayo and Medica either sold or administered. For Plaintiff and Plaintiff Class, Medica broke this promise by punishing them for seeing out-of-network providers and saddling their insureds with enormous balance bills all while reaping large profits from these supposedly premier insurance plans.

3.      Mayo and Medica illegally withheld information that would have allowed its members to make informed choices. They used a Medica Member Portal Online Medica Member Portal search tool which provided outright false and/or misleading information. They withheld how they calculated out-of-network reimbursement costs and deductibles.

4.      Mayo and Medica failed its employees and members especially when it came to specific health care concerns. The online Medica Member Portal Medica Member Portal search tool would often show zero providers in network, so when a member sought out an out-of-network provider under the impression that the network would have to cover those services since they don't provide anyone in network for that particular health concern, the member would later discover that none of the services were covered since there actually were in network providers.

1
2
3

5.    The online Medica Member Portal Medica Member Portal search tool would also often show in-network providers that then ultimately ended up being out-of-network providers.

4
5

6.    Plaintiff brings this suit against Mayo and Medica to recover the money they unjustly owe or overpaid for care that Medica should have reimbursed.

6
7
8
9
10

7.    Every claim at issue in this litigation is for health care services that Medica was required to pay at a non-network provider reimbursement amount ("NNPRA"). Every Plaintiff was insured under a Mayo health insurance policy that was administered by Medica. Every policy provided coverage for out-of-network health care services at an NNPRA set by Defendants.

11
12
13

8.    While Mayo issued and underwrote every health insurance plan at issue in the present litigation, Medica administered the plan and determined the reimbursement rate for every underpaid claim in the present litigation.

14
15
16
17
18

9.    This underpayment is the result of Defendants' unilateral discretion to determine a NNPRA while failing to disclose which NNPRA Defendants used. As a result, Plaintiff and Class were denied the information necessary to understand and challenge Defendants' adverse benefits determinations. By engaging in this conduct, Defendants violated ERISA and their fiduciary duties to Plaintiff and the Class.

19

## II    <u>PARTIES</u>

20
21
22
23
24
25

10.    Plaintiff S.M.O. is a pseudonym for a person whose identity and health information are protected in this filing pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), *codified at* 42 U.S.C. §§ 1320(d)(6), *et seq.* S.M.O. is a natural person residing in Scottsdale, Arizona. At all times relevant herein S.M.O. was an employee of Mayo Clinic and a member of the health plan fully funded by Mayo and administered by Medica.

26
27
28

11.    Defendant Mayo Clinic is a nonprofit organization organized under the laws of the State of Minnesota with its principal place of business at 200 First Street SW, Rochester, Minnesota, 55905.

12.    Defendant MMSI, Inc., is a corporation organized under the laws of the State of Minnesota with its principal place of business at 401 Carlson Parkway, Minnetonka, MN, 55305. MMSI, doing business as Medica Health Plan Solutions ("Medica") is the designated medical claims administrator under the Mayo Medical Plan.

### III    JURISDICTION AND VENUE

**A.    Subject-Matter Jurisdiction**

13.    Defendants' actions in selling and administering employer-sponsored health care plans, including determining reimbursement rates, are governed by the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001, et seq. Plaintiffs assert subject matter jurisdiction under 28 U.S.C. §1331 (federal question jurisdiction), 29 U.S.C. § 1132(e) (ERISA).

**B.    Personal Jurisdiction**

14.    This Court has personal jurisdiction over Defendants because Mayo and Medica are business entities organized under the laws of the State of Minnesota with their principal place of business in this district.

**C.    Venue**

15.    This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965, because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District, because both Defendants conduct a substantial amount of business in this District, and because the plan documents specify this District as the sole venue for disputes arising out of the plan.

### IV    GENERAL ALLEGATIONS

**A.    The Defendants' Roles and Responsibilities**

16.    Mayo is one of the nation's leading health care providers, providing health care across the country at various campuses and regional networks while engaging in cutting-edge medical research.

17.    As an employer, Mayo self-funds group health care plans subject to ERISA. Mayo employs thousands of employees across the country, with most employees

concentrated around the various campuses and regional facilities. A great number of Mayo employees, however, work remotely.

18.    The plan is a fully insured employee welfare benefits plan under 29 U.S.C. § 1001, *et. seq.*, ERISA.

19.    For self-funded ERISA plans, the plan sponsor/employer, like Mayo, will typically enter into an agreement with a third party to administer the plan by performing various administrative responsibilities. These responsibilities include providing plan members with plan documents, interpreting and applying plan terms, making coverage and benefits decisions, handling appeals of coverage and benefits decisions, and providing for payment in the form of medical reimbursements.

20.    The administrative service agreement either explicitly or constructively appoints Medica as an ERISA fiduciary and delegates to Medica authority and responsibility to administer claims and make final benefits decisions based on claim procedures and standards Medica developed. Medica collects administrative service fees from Mayo's plans.

**B.    Medica's Non-Network Provider Reimbursement Amount**

21.    Plaintiff and the Plaintiff Class have Mayo health insurance plans administered by Medica that have underpaid the health services claims at issue here. All of the plans at issue here provide for coverage of out-of-network health services. All relevant plans in this matter covered the treatment provided to Plaintiff and the Plaintiff Class. The issue in this litigation is the underpayment of benefits.

22.    Insurance policies do not always cover services for out-of-network, noncontracting providers. Premiums for insurance plans that do provide out-of-network coverage, called Preferred Provider Organization ("PPO") plans, are substantially more expensive than Health Maintenance Organization ("HMO") or Point of Service ("POS") plans that only reimburse in-network or contracting providers.

23.    As a result, insurers utilize various methods to determine the amount the insurer will reimburse its members for out-of-network care. The methodologies used to

determine reimbursement rates must be disclosed in plan documents to allow members to make informed decisions when choosing an insurance plan.

24.   Many insurers use usual, customary, and reasonable ("UCR") rates to calculate reimbursement amounts. UCR rates are a fixture of the managed care payment system in the United States. When doctors, hospitals, or other healthcare providers are out of network and do not have contracts with health insurance companies, the insurers must decide how much to pay. Generally, private insurers claim to reimburse out-of-network providers at UCR rates.

25.   The United States' Centers for Medicare Services ("CMS"), defines UCR as: "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service."[1]

26.   The precise methodology and inputs considered in calculating UCR rates are often obscured from members, leaving members unable to adequately understand or challenge reimbursement rates that are often inconsistent, confusing, and unreasonable. As a result, many lawsuits have challenged various aspects of UCR rates.

27.   Medica goes even further to shield its reimbursement rates from scrutiny. Eschewing a common UCR methodology, Medica affords itself unilateral discretion to use one of five methods to calculate what it calls the Non-Network Provider Reimbursement Rate ("NNPRA"). Under the terms of the plan, Medica reimburses members for the NNPRA amount, leaving members responsible for any remainder.

28.   According to Medica's own benefits information it provides to members, Medica may set the NNPRA based upon five criteria:

    a.   A percentage of the amount Medicare would pay for the service in the location where the service is provided;

---

[1] Healthcare.gov "Usual Customary or Reasonable" https://www.healthcare.gov/glossary/ucr-usual-customary-and-reasonable/#:~:text=The%20amount%20paid%20for%20a,same%20or%20similar%20medical%20service. (accessed April 1, 2024).

b.  A percentage of the provider's billed charge;

c.  A nationwide provider reimbursement database that considers prevailing reimbursement rates and/or marketplace charges for similar services in the geographic area in which the service is provided;

d.  An amount agreed upon between Medica and the non-network provider; or

e.  An amount equal to the median of Medica's network contracted rates for the same or similar services in the geographic area in which the service is provided.[2]

29.    The third methodology mirrors the UCR rates typical throughout the industry, but it is only one of five options available to Medica.

30.    Defendants' underpayments of the claims at issue here resulted in unjustly large balance bills to Plaintiff and the Plaintiff Class. Plaintiff and the Plaintiff Class members are then forced to pay, out of their own pockets, the remaining balance billed by the providers for treatment.

31.    Medica fails to identify any of the criteria it considers when determining the NNPRA. The laundry list of methods Medica states it may use is misleading and provides no material information to Plaintiff and the Plaintiff Class on the exact method it uses. Medica also fails to provide Plaintiff and Plaintiff Class members advance notice of how a particular service will be reimbursed.

32.    Medica's NNPRA Pricing Methods are deceptive, misleading, arbitrary, illusory, unpredictable, and allow for inconsistent reimbursements, in violation of ERISA and Medica's fiduciary obligations.

**C.    Medica Fails to Provide Proper Notice of Out-Of-Network Reimbursement**

33.    Medica's plan documents fail to state when a certain method may be used, or what factors Medica considers when deciding upon a particular method.

---

[2] These methods are collectively referred to herein as "NNPRA Pricing Methods."

34.     Under ERISA, an insurer is required to provide written notice of Adverse Benefits Determinations ("ABD") within thirty (30) days. Under ERISA and the CFR implementing ERISA, an ABD is defined as:

> Any of the following: A denial, **reduction**, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, **reduction**, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, **reduction**, or termination of, or a failure to provide or make payment (in whole or in part) **for, a benefit resulting from the application of any utilization review**, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate;

29 C.F.R. § 2560.503-1(m) (emphasis added).

35.     An ABD must provide notice of the specific reasons for such a determination with reference to the specific provision of the plan justifying the decision. 29 C.F.R. § 2560.503–1(g)(1).

36.     Medica's ABDs are in the form of an Explanation of Benefits ("EOB").

37.     Medica's EOBs fail to provide the information required by ERISA. On Medica's EOBs it provides a spreadsheet of the different fees and reimbursement amounts. Where a NNPRA has been determined, however, Medica fails to identify which of the NNPRA Pricing Methods it utilized to determine the NNPRA. The EOBs also fail to identify which provision of the plan was utilized to determine the NNPRA.
...

38.    The only clarity provided on the EOBs are "Notes ID" such as "UM-M13" which meant "[s]ervice was provided by an out-of-network provider. Your provider may bill you for amounts that exceed the plan allowed amount." Other codes included "Non-covered charge(s)" (PR-96) and "Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement" (CO-45).

## Notes

| CODE | DESCRIPTION |
|---|---|
| CO-45 | Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement. |
| SM-1 | This claim is a duplicate and was previously processed. |
| PR-2 | Coinsurance Amount |
| PR-96 | Non-covered charge(s). |
| UM-M13 | Service was provided by an out-of-network provider. Your provider may bill you for amounts that exceed the plan allowed amount. |
| PR-1 | Deductible Amount |

When we receive a claim for you, we provide an Explanation of Benefits (EOB) to you and your provider. It describes how the services you received were covered. It also shows any amount you owe.
Use your EOB to review the charges on any bill you receive from your provider that is associated with this claim. If you notice differences between the EOB and your bill, contact customer service or your provider's office to get help reconciling them.
The Claim Summary Page gives you an overview of how your claim was handled, and may help you interpret the information on the following Claim Detail page. The Detail page is provided to you based on requirements established in state law.

39.    Due to the lack of specificity of the EOBs, Plaintiff and Plaintiff Class members had no notice of which NNPRA Pricing Method was used, how the NNPRA was calculated, and/or whether that NNPRA would be consistently applied in the future. As a result, members lacked specifics to understand and, if necessary, appeal Medica's ABDs.

40.    Even worse, due to the inconsistent, arbitrary, and opaque application of various NNPRA Pricing Methods, Medica's members could not make informed decisions regarding their health care.

41.    Medica's lack of transparency continued throughout the appeals process. In decisions affirming their prior ABDs, Medica failed to identify which NNPRA Pricing Method it applied, how the NNPRA was calculated, and why that particular NNPRA Pricing Method was selected.

42.    The failure to identify the specific NNPRA Pricing Method violated ERISA and Defendants' duty as a fiduciary.

43.     Even when members specifically asked which NNPRA Pricing Method was utilized and how the NNPRA was calculated, Defendants refused to provide the requested information.

44.     Upon information and belief, Medica refuses to inform members of the specific NNPRA Pricing Method used in order to obscure the fact that Medica utilizes whichever method offers the lowest reimbursement rate.

**D.    Medica Fails to Provide Adverse Benefits Determinations Within the Timeframe Mandated By ERISA**

45.     Under ERISA, an insurer must provide notice of an ABD within 30 days of the claim being filed by the member. If the information provided by the member is incomplete, the ABD must be provided within 30 days of receiving all required information.

46.     Medica routinely fails to provide ABDs to members within the timeframe required by law, materially impacting its members' ability to choose the medical plan best suited to their needs. Where the delay falls within the time period a member must choose their plan for the upcoming year, a member can be severely prejudiced by a delay that prevents the member from making an informed decision for the upcoming year.

**E.    Defendants Provide Materially False Information Regarding Available Providers**

47.     Members of the Mayo Medical Plan were told to use the Medica Member Portal Provider Medica Member Portal search tool located online to display provider options. The Portal allowed members to search by specialty, location, and age range of patients.

48.     When members using the Medica Member Portal search tool fail to find in-network providers, they are forced to seek treatment from non-network providers. These members rely on the results of the Medica Member Portal search tool to then seek out-of-network providers with the understanding that they will not be penalized by higher rates because no in-network providers were available within their geographic area.

49.     However, after submitting claims for these services to Medica, Medica only reimburses members at the NNPRA amount, leaving the members responsible for any remaining portion. When members point out that the Medica Member Portal search tool did not identify any in-network providers within the geographic area, Medica responds that their system shows in-network providers within the geographic area—despite the Medica Member Portal search tool returning no results.

50.     To justify charging NNPRA rates, Medica also claims that members are contractually required to call Medica to get prior approval to use out-of-network providers.

51.     As a result, Plaintiff and Plaintiff Class members are routinely charged out-of-network rates despite Medica's own Search Portal showing no in-network providers within their geographical area. Members are therefore forced to pay higher rates after seeking out services in reliance on information provided by Medica.

## V    <u>PLAINTIFF'S ALLEGATIONS</u>

52.     Plaintiff, S.M.O. is a longtime employee of Mayo Health Clinic. At all times relevant herein, S.M.O. was a participant in a Mayo healthcare plan, with their child, a beneficiary of the plan.

53.     Beginning in 2019, S.M.O. sought mental healthcare treatment for their child in and around Scottsdale, Arizona. Using the Medica Member Portal Provider Medica Member Portal search tool, S.M.O. curated the search to seek pediatric mental healthcare providers and also filtered for mental healthcare for those under seventeen years of age within 50 miles of their residence.

...

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

54.     None of the searches produced any results for in-network providers.

55.     With no mental healthcare providers identified by Medica's Medica Member Portal search tool, S.M.O. was still determined to find a health care provider for their child. Eventually, they identified a provider and scheduled appointments for their child.

56.     Over time, Plaintiff's child received treatment from various out-of-network mental healthcare providers. In every instance, no in-network mental healthcare providers were identified on Medica's Medica Member Portal search tool.

57.     Following these treatments, Plaintiff submitted claims for these services to Medica for coverage as required under the Plan.

58.     Medica consistently failed to make ABDs within the timeframe required by the Plan and ERISA. In one instance, Medica failed to respond to a claim for over three months. Due to this delay, Plaintiff was required to select their health plan for the year 2023 without learning what amount of the services would be reimbursed. Only after Plaintiff had selected their Plan for the year 2023 did Plaintiff learn that Medica would only reimburse certain services at the NNPRA rate, leaving Plaintiff responsible for the remaining $1,050.00. Had Medica provided ABDs within the time period required by the

Plan and ERISA, Plaintiff would have selected an alternative plan to account for the out-of-network mental healthcare coverage.

59.     These ABDs, which, as stated above, came in the form of EOBs, failed to provide notice to Plaintiff of the specific provision justifying the determination. Specifically, the EOBs failed to identify the specific provision of the NNPRA Pricing Method applied to determine the NNPRA. The EOBs also did not inform Plaintiff that in-network providers were available within their geographic area.

60.     Rather than provide reference to the specific provision justifying the ABD, the EOBs used "Notes ID" providing vague justifications using terminology inconsistent with the plan documents. For example, the term NNPRA is not used in any EOB.

## Notes

| CODE | DESCRIPTION |
|------|-------------|
| PR-1 | Deductible Amount |
| PR-96 | Non-covered charge(s). |
| SM-147 | You received these services from an out-of-network provider and your out-of-network benefits applied. Your provider may bill you for amounts that exceed the plan allowed amount. |
| CO-45 | Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement. |
| UM-M13 | Service was provided by an out-of-network provider. Your provider may bill you for amounts that exceed the plan allowed amount. |

When we receive a claim for you, we provide an Explanation of Benefits (EOB) to you and your provider. It describes how the services you received were covered. It also shows any amount you owe.

Use your EOB to review the charges on any bill you receive from your provider that is associated with this claim. If you notice differences between the EOB and your bill, contact customer service or your provider's office to get help reconciling them.

The Claim Summary Page gives you an overview of how your claim was handled, and may help you interpret the information on the following Claim Detail page. The Detail page is provided to you based on requirements established in state law.

If you disagree with our decision, you have options to file an appeal. We have outlined these options on the attached pages.

61.     Because of the lack of specific information provided by Medica, Plaintiff lacked the requisite information to understand the bases for the ABDs or the means of calculation. As a result, Plaintiff was deprived of the information necessary in order to perfect their claim and receive the "full and fair" review of their claim guaranteed under ERISA.

62.     Plaintiff appealed the ABDs concerning the out-of-network mental healthcare within the timeframe required by their Plan and ERISA. Plaintiff provided all information available to them; however, Plaintiff was denied access to material and

necessary information including the NNPRA Pricing Method used, how the NNPRA Pricing Method was calculated, and why the specific NNPRA Pricing Method was utilized. This denied Plaintiff the ability to obtain a "full and fair review" of their claim as required by ERISA.

63.    In response to Plaintiff's appeal, Medica upheld its ABDs. While the appeal letter identified general provisions of the Benefits Booklet, it failed to identify the specific provision used to calculate the NNPRA. The letter failed to identify which NNPRA Pricing Method was used, how the NNPRA amount was calculated, or why the particular method was used.

64.    The appeal letters also claimed that Medica identified in-network mental healthcare providers within Plaintiff's geographic area. One such letter stated: "A review of the Mayo Arizona provider network found several mental health providers within 25 miles of your zip code. If you are able to find a network provider on the Medica.com/Signin, find care, please contact Medica Member Services for the Mayo Medical Plan at the number listed on your ID card."

I've reviewed your appeal and am unable to grant your request for the following reasons:

- A review of the Mayo Arizona provider network found several mental health providers within 25 miles of your zip code. If you are able to find a network provider on Medica.com/Signin, find care, please contact Medica Member Services for the Mayo Medical Plan at the number listed on your ID card.
- Your employer plan covers out-of-network mental and behavioral health claims at the Tier 2 in-network benefits level. However, when a provider is out-of-network, they may bill you the amounts above the non-network provider reimbursement amount (NNPRA).

65.    The appeal letter failed to state how Medica was identifying in-network versus out-of-network pediatric mental healthcare providers. It also failed to reveal whether Medica looked into its own Medica Medica Member Portal search tool through the online portal provided to Medica members to determine the accuracy of what is being communicated to its members.

66.    Interestingly, after Plaintiff communicated their concerns regarding the Medica Medica Member Portal search tool online portal, Medica updated the portal without comment. After this coincidental update, the portal then suddenly showed in-network pediatric mental healthcare providers, which Medica pointed out to Plaintiff, stating that they should have utilized those providers that were then identified through the portal.



67.    Plaintiff continued to communicate with both Medica and Mayo, specifically asking Defendants to identify which NNPRA Pricing Method was used. Medica and Mayo never provided Plaintiff with the requested information.

68.    Plaintiff continued to appeal their claims, eventually seeking an external appeal. The external appeal body, Medical Review Institute of America, LLC ("MRIA"), upheld Medica's determinations. Like Medica, MRIA did not identify which NNPRA Pricing Method was used, how the NNPRA was calculated, or why that particular method was used.

69.    MMRIA also found that "[t]he Mayo Arizona provider network has multiple mental health providers within 25 miles of the patient's zip code. The patient indicated

that she was unable to find a provider online but there is no record that the plan was contacted to inquire about in-network providers or to request prior authorization for use on an out of network provider prior to receiving the services."

70.    MMRIA does not identify what evidence supported its claim that Mayo Arizona had pediatric mental healthcare services in Plaintiff's geographic area. MMRIA also did not reference any provision of the Benefit Booklet that required Plaintiff to directly contact Medica to inquire about in-network providers or seek prior authorization before using an out-of-network provider.

71.    From the time Plaintiff submitted their claims through the appeals, Medica and Mayo denied Plaintiff the specific provisions justifying their ABDs. Specifically, Medica and Mayo failed to disclose the specific provisions relied on and the NNPRA Pricing Method used to calculate the NNPRA. As a result, Plaintiff was deprived of the necessary information to perfect their claim and push for a "full and fair review."

72.    As a result of Defendants conduct, Defendants routinely underpaid Plaintiff's claims and then deprived Plaintiff of the means to effectively challenge said underpayments.

73.    Plaintiff has made numerous efforts to appeal Defendants' underpayments, exhausting all administrative remedies available.

74.    Defendants routinely failed to disclose material information concerning which NNPRA Pricing Method was applied, why that particular method was applied, and how the NNPRA Pricing Method was calculated. Defendants also failed to apply NNPRA Pricing Methods consistently, resulting in arbitrary, inconsistent, and unpredictable reimbursement amounts.

75.    Plaintiff would not have sought certain out-of-network mental and/or behavioral health treatments had Defendants been transparent concerning the NNPRA Pricing Methods and/or the availability of in-network providers identified by Medica's Search Portal.

## VI    CLASS ACTION ALLEGATIONS

76.    Plaintiff brings this action on behalf of themself, and all other persons similarly situated (hereinafter referred to as "the Class").

77.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> Any member of a health benefit plan either administered or insured by Medica and Mayo whose claims for out-of-network health treatments were underpaid or repriced by Medica and/or Mayo.

78.    Excluded from the Class are all Defendants, any entities in which a Defendant has a controlling interest, any Judge to whom this action is assigned and any members of such Judge's staff and immediate family.

79.    Plaintiffs do not know the exact number of members in the Class but reasonably believe that Class members number in the thousands and is therefore so large as to make joinder of all members impracticable within the meaning of Rule 23(a)(1) of the Federal Rules of Civil Procedure.

80.    Pursuant to Rule 23(a)(2) of the Federal Rules of Civil Procedure, there are questions of law or fact common to all class members, including, but not limited to, the following:

a. Whether Defendants have underpaid the Class for out-of-network health services based upon improper methodologies for pricing NNPRA rates;

b. Whether Defendants have breached their fiduciary duties to the Class;

c. Whether Defendants use of its NNPRA Pricing Methods to reimburse the Class violates ERISA;

d. Whether the Medica Member Portal Provider Medica Member Portal search tool provided materially false information concerning the availability of health service providers;

e. Whether Class members relied on the materially false information conveyed by Defendants on the Medica Member Portal Provider Medica Member Portal search tool to select out-of-network health service providers given the apparent lack of in-network providers identified by the Medica Member Portal search tool;

f. Whether Class members out-of-network health services were underpaid or unpaid as a result of the materially false information contained on the Medica Member Portal Provider Medica Member Portal search tool;

g. Whether Class members may recover unpaid and/or underpaid benefits and how these unpaid and underpaid benefits may be calculated;

h. Whether Defendants failure to provide Class members with adequate notice of the NNPRA Pricing Methods used to calculate the reimbursement rates for out-of-network services violates ERISA;

i. Whether Defendants claims review procedures comply with ERISA;

j. The standard of review applicable to Defendants' ABDs (EOBs);

k. The standard of review applicable to Defendants' appeal decisions;

l. Whether the contractual terms of the relevant plans authorize Defendants' NNPRA Pricing methods;

m. Whether Defendants violated their fiduciary duties owed to Class members when it made reimbursement decisions based on its NNPRA Pricing Methods or otherwise engaged in the conduct alleged in the Complaint;

n. Whether Defendants' failure to properly disclose the specific reasons or NNPRA Pricing Methods in its ABDs (EOBs), and failure to disclose other material information, violated ERISA;

o. Whether Class members are entitled to declaratory and/or injunctive relief arising from Defendants conduct as alleged herein;

p. Whether interest should be added to the payment of unpaid and/or underpaid benefits under ERISA;

q. The appropriate damages to be awarded for Defendants' conduct that violated legal and/or fiduciary standards.

81.    The claims of Plaintiff are typical of the claims of the defined Class, within the meaning of Rule 23(a)(3) of the Federal Rules of Civil Procedure and are based on and arise out of the same uniform and standard illegal practices of the Defendants, as alleged herein by the Plaintiff. The proposed class representatives state claims for which relief can be granted that are typical of the claims of absent class members. If litigated individually, the claims of each class member would require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

82.    Plaintiff is committed to pursuing this action and serving the proposed Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately represent the interests of the members of the proposed Class within the meaning of Rule 23(a)(4) of the Federal Rules of Civil Procedure, and will not have any interests adverse to, or that directly or irrevocably conflict with, the interests of other class members.

83.    Plaintiff has retained counsel experienced in handling class action claims.

84.    A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to ensure that all individuals subjected to Defendants' uniform and standard illegal practices are equally compensated. Separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Mayo and Medica as to the Class. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small. Further, because some of the unpaid benefits denied Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to

individually redress the harm done to them. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

85.    Defendants acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate.

## VII  <u>CAUSES OF ACTION</u>
### COUNT I
### Violations of RICO: 18 U.S.C. § 1962(c)
### (On behalf of Plaintiffs and the Class Against Mayo and Medica)

86.    Plaintiffs and the Class hereby repeat and reassert the General and Class allegations as if fully set forth herein.

87.    The object of the civil Racketeer Influenced and Corrupt Organizations Act (RICO) is not merely to compensate victims but to turn them into prosecutors, that is, private attorneys general, dedicated to eliminating racketeering activity. 18 U.S.C.A. § 1961 et seq.

88.    Plaintiffs and the Class' RICO claim is not precluded by the McCarran–Ferguson Act, § 2(b), 15 U.S.C. § 1012(b) as "RICO is not a law that 'specifically relates to the business of insurance'" and where, as here, the claims at issue do not "invalidate, impair, or supersede" any relevant state laws regulating insurance. *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999). Defendants can comply with both RICO and relevant state laws governing insurance and Plaintiffs' RICO claim is not precluded.

89.    Mayo and Medica acted as an "enterprise" under 18 U.S.C. § 1961(4), have engaged in acts of racketeering activity, namely violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), committing "Federal Health offenses" per 18 U.S.C. § 24 that include violations of 18 U.S.C. § 1027, 18 U.S.C. § 1341, and 18 U.S.C. § 1343.

...

90.    Medica indisputably provides a "health care benefit program"[3] to its members, which includes Plaintiffs and the Class.

91.    A "Federal health offense" is defined as "a violation, or a criminal conspiracy to violate… [18 U.S.C. §] 1027… or section 411, 518, or 511 of the Employee Retirement Income Security Act of 1974" 18 U.S.C. § 24.

92.    Mayo and Medica's actions, as alleged supra, are criminal acts under 18 U.S.C. § 1027 that states, "[w]hoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published… of any employee welfare benefit plan… makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title…shall be fined under this title, or imprisoned not more than five years, or both."

93.    Medica, under ERISA, is required to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." (29 U.S.C. § 1133). Under ERISA, a notification of any adverse benefit determination must communicate, "in a manner calculated to be understood by the claimant ... [t]he specific reason or reasons for the adverse determination." 29 C.F.R. § 2560.503–1(g)(1)(i). The notification must also make "[r]eference to the specific plan provisions on which the determination is based," 29 C.F.R. § 2560.503–1(g)(1)(ii), and it must describe "the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." 29 C.F.R. § 2560.503–1(g)(1)(iv).

---

[3] "'health care benefit program' means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C.A. § 24(b).

94.    The Plaintiffs and the Class received EOBs from Medica that did not meet these requirements.

a.    The EOBs failed to identify the specific provision of the Benefit Booklet justifying the NNPRA.

b.    The EOBs failed to identify the NNPRA Pricing Method used;

c.    The EOBs failed to specify how the NNPRA was calculated; and

d.    The EOBs failed to state why the particular NNPRA Pricing Method was utilized.

95.    The EOB made no mention of the NNPRA, instead using terms such as "Allowed Amount," "Patient Non-Covered Amount," and "Deductible Amount" that were not mentioned or defined in either the Summary Plan Description or Benefits Booklet provided to members.

96.    The EOB also failed to identify which method it used to calculate the NNPRA. As a result, the "Allowed Amounts" varied across different services, with little information explaining or justifying these differences. As a result, Plaintiff and Class members were responsible for arbitrary, inconsistent, and unpredictable reimbursement amounts.

97.    Mayo and Medica also operate the Medica Member Portal Medica Member Portal search tool on Medica's website and direct members to use the Medica Member Portal search tool to locate in-network providers. As a result of Medica and Mayo's design and operation of the Medica Member Portal search tool, the Medica Member Portal search tool falsely informs members that in-network providers are not available within their geographic network.

98.    In reliance upon these false Medica Member Portal search tool results, Plaintiff and the Class seek out-of-network providers who, according to the terms of the Plan, will be covered at in-network rates because no in-network providers are available.

99.    After Plaintiff and Class act in reasonable reliance on the Search Term results, however, Medica and Mayo enter ABDs holding Plaintiff and Class responsible

for the services at out-of-network rates, charging them the difference between the providers' charge and inconsistent and arbitrary NNPRA rates.

100.    To justify the ABDs, Medica and Mayo claim that in-network providers are available, despite the Medica Member Portal search tool identifying no such providers. Medica and Mayo make this determination based on internal Medica Member Portal search tools unavailable to members.

101.    Mayo and Medica's actions, as alleged supra, are criminal acts under 18 U.S.C. § 1035 that makes it a crime "in any matter involving a health care benefit program" to "knowingly and willfully" make "any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services."

102.    Mayo and Medica's actions, as alleged supra, are criminal acts under 18 U.S.C. § 1343 that makes it a crime for: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

103.    At all relevant times, Mayo and Medica knew that the claims at issue here would be underpaid at the lowest possible rate.

104.    Mayo and Medica thus obtained the value of the Plaintiff's and Class' overpayments for Mayo and Medica's underpayment of services and retained those benefits illegally.

105.    Medica has the Medica portal on their website and Medica's false representations are made by wire and US mail to the Plaintiffs, the Class, and to the providers.

106.  Thus, Mayo and Medica are engaged in an illegal "kick-back" scheme where Mayo and Medica take funds given to them by plan members and retain them illegally for their own benefit, forcing Plaintiffs and the Class to pay twice for the same services. The more effective the fraud, the larger the kick-back.

107.  This sort of behavior is of the exact nature and character that RICO was designed to prosecute.

108.  Plaintiff has RICO standing to bring these claims.

109.  The harm suffered by Plaintiff is her payment of excessive balance bills. Plaintiff paid large sums of money that were properly Medica's responsibility.

110.  This harm is "by reason of" the RICO violation. Without the RICO activity engaged in by Mayo and Medica, these harms would not have arisen.

111.  It is the enterprise between Mayo and Medica and the RICO violations described above that caused Plaintiff's harm.

112.  Mayo and Medica are "persons" within the meaning of RICO under 18 U.S.C. §§ 1961(3) and 1964(c).

113.  Mayo and Medica carried out their underpayment scheme through their joint participation and conduct in an association-in-fact "Enterprise," within the meaning of 18 U.S.C. § 1961(4). The Enterprise is comprised of Mayo and Medica.

114.  Medica through the Enterprise described above and in conspiracy with Mayo undertook a fraudulent scheme to underpay for health services.

115.  At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of RICO, 18 U.S.C. § 1962(c).

116.  The Mayo-Medica Enterprise was at all relevant times a continuing unit involving Mayo and Medica functioning with a common purpose of underpaying for health services and increasing the profits of the Enterprise.

117.  Mayo and Medica remained members of the Enterprise undertaking countless and nearly constant acts of mail and wire fraud for their common purpose described above.

118. Their fraudulent and deceptive acts further constitute criminal activity as described supra.

119. The Enterprise was used to create a mechanism or vehicle by which Medica could reduce payments through the use of a deceptive, flawed process that could not be challenged effectively, including by appeal.

120. The above-described pattern of racketeering activity is related because it involves the same fraudulent scheme, common persons, common out-of-network claim practices, common results impacting upon common victims, and is continuous because it occurred over several years, and constitutes the usual practice of Medica and the Enterprise, such that it amounts to and poses a threat of continued racketeering activity.

121. Mayo's and Medica's scheme to defraud is open-ended and on-going.

122. The direct and intended victims of the pattern of racketeering activity described previously herein are the Plaintiff and Class, whom Medica has forced to overpay for health services.

123. As a result of Medica's fraudulent scheme, Plaintiff and the Class were injured in their business or property by reason of Medica's RICO violations because they were forced to overpay for health services.

124. Mayo and Medica have further deprived them of the knowledge necessary to discover or challenge the underpayments.

125. Plaintiff and the Class' injuries were proximately caused by Mayo's and Medica's violations of 18 U.S.C. § 1962(c) because these injuries were the foreseeable, direct, intended and natural consequence of the aforementioned RICO violations (and commission of underlying predicate acts) and, but for the RICO violations (and commission of underlying predicate acts), they would not have suffered these injuries.

126. Pursuant to Section 1964(c) of RICO, 18 U.S.C. § 1964(c), Plaintiff and the Class are entitled to recover threefold their damages, costs and attorneys' fees from Mayo and Medica and other appropriate relief.

## COUNT II

**Claim for Underpaid Benefits Under Group Plans Governed by ERISA**

**(On Behalf of Plaintiffs and the Class Against Medica)**

127.    The General and Class Allegations are hereby repeated as if fully set forth herein.

128.    Mayo and Medica violated their legal obligations under ERISA-governed plans and federal common law each time it made the benefit reductions that resulted in the underpayment of the claims at issue.

129.    These underpayments are adverse benefit determinations and are violations of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

130.    Medica's breaches included, among other things, the misuse of NNPRA Pricing Methods to underpay and reduce benefits paid to providers for out-of-network health services.

131.    In certain employer-funded plans, Medica makes the final decision on benefit appeals and/or has been given authority, responsibility and discretion (hereinafter "discretion") with regard to the payment of benefits.

132.    Where Medica acts as a fiduciary or performs discretionary benefit determinations or otherwise exercises discretion, or determines final benefit appeals, Medica is liable for underpaid benefits to Plaintiff and members of the class in both fully insured health plans, where benefits are paid from Medica's assets, and in employer-funded ERISA health plans.

133.    Mayo and Medica further violated its obligations under ERISA when it failed to comply with applicable state laws that require Mayo and Medica to pay provider charges using the appropriate methodologies.

134.    Mayo and Medica's omissions and lack of disclosure to the Plaintiff and the Class, its members, violated its legal obligations.

135.    Mayo and Medica violated obligations each time it engaged in conduct that discouraged or penalized its members' use of out-of-network providers, such as by making illegal benefit reductions and adverse benefit determinations.

136.    Mayo and Medica, as the party which exercised all discretionary authority and control over the administration of the plan of each Plaintiff and Class member including the management and disposition of benefits under the terms of the plan, owed a fiduciary duty to Plaintiff and the Class.

137.    Mayo and Medica breached its fiduciary duties to Plaintiff and the Class by failing to pay proper out-of-network benefits without justification. Mayo and Medica therefore owe, and should be ordered to pay, the benefits that were illegally underpaid based on the policies detailed herein.

138.    Medica is liable to the Plaintiffs and the Class as they have overpaid in the amount that Medica was obligated to pay to providers.

139.    Plaintiff, on their own behalf and on behalf of the members of the Class seek underpaid benefits, recalculated deductible and coinsurance amounts and interest back to the date their claims were originally submitted to Medica.

140.    Plaintiffs request attorneys' fees, costs, prejudgment interest and other appropriate relief against Mayo and Medica.

## COUNT III

**Failure to Provide Accurate EOB and SPD and Request for Declaratory and Injunctive Relief**

**(On Behalf of Plaintiffs and the Class Against Medica)**

141.    The General and Class Allegations are hereby repeated as if fully set forth herein.

142.    Mayo and Medica's disclosure obligations under ERISA include furnishing accurate materials summarizing its group health plans, known as SPD materials, under 29 U.S.C. § 1022 and supplying accurate EOBs, SPDs and other required information is actionable under 29 U.S.C. § 1132(c).

143.    Mayo and Medica's failure to disclose material information about their out-of-network benefit reductions, and illegal adverse benefit determinations, creating material changes to the Plaintiffs and Class' benefit policy without disclosure violated ERISA, federal regulations, and federal common law.

144.    Plaintiff and the Class have been proximately harmed by Mayo and Medica's failure to comply with 29 U.S.C. § 1022 and 29 U.S.C. § 1024(b)(4), federal regulations, and federal common law, and are entitled to appropriate relief under ERISA, including injunctive and declaratory relief to remedy Mayo and Medica's continuing violation of these provisions.

## COUNT IV

### Violation of Fiduciary Duties of Loyalty and Due Care and Request for Declaratory and Injunctive Relief

### (On Behalf of Plaintiffs and the Class Against Medica)

145.    The General and Class Allegations are hereby repeated as if fully set forth herein.

146.    Mayo and Medica acted as "fiduciaries" to Plaintiff and the Class as such term is understood under 29 U.S.C. § 1002(21)(A).

147.    As an ERISA fiduciary, Mayo and Medica owed, and owes, its Members in ERISA plans a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of a like enterprise.

148.    Further, ERISA fiduciaries must act in accordance with the documents and instruments governing the group plan. 29 U.S.C. § 1104(a)(l)(B) and (D).

149.    In failing to act prudently, and in failing to act in accordance with the documents and instruments governing the plan, Mayo and Medica violated its fiduciary duty of care.

150.    As an ERISA fiduciary, Mayo and Medica owed and owes its Members a duty of loyalty, defined as an obligation to make decisions in the interest of its Members,

and to avoid self dealing or financial arrangements that benefit it at the expense of its Members under 29 U.S.C. § 1106. Mayo and Medica cannot, for example, make benefit determinations for the purpose of saving money at the expense of its Members.

151.    Mayo and Medica violated their fiduciary duties of loyalty and due care by, inter alia, making out-of-network benefit reductions and adverse benefit determinations that were not authorized by the plan documents and were also misrepresented on EOBs sent to the Plaintiffs and the Class, causing Plaintiff and the Class to incur, and pay, substantial balance bills to the benefit to Mayo and Medica's bottom line.

152.    In certain self-insured plans, which are sometimes designated ASO, Mayo and Medica make the final decision on benefit appeals and/or have been given authority, responsibility, and discretion with regard to benefits.

153.    Where Mayo and Medica act as fiduciaries or perform discretionary benefit determinations or otherwise exercise discretion or determine final benefit appeals, Mayo and Medica are liable for underpaid benefits to Plaintiff and the Class in both fully insured health plans, where benefits are paid from Mayo and Medica's assets, and in employer-funded ERISA health plans.

154.    Mayo and Medica breached their fiduciary duties by sending noncompliant EOBs and other communications to Plaintiff and the Class.

155.    In addition, Mayo and Medica violated (and continue to violate) their fiduciary duties of loyalty by failing to inform Plaintiff and the Class of material information, including but not limited to the lack of transparency concerning the NNPRA Pricing Methods and flaws in the data and methodology used to determine NNPRA reimbursement.

156.    In relying on improper pricing methods, which were noncompliant with its contractual obligations and invalid to make NNPRA determinations, and nowhere disclosed to Plaintiff and the Class in their plan documents or EOBs, Mayo and Medica violated their fiduciary obligations to Plaintiff and the Class.

157.  Plaintiff and the Class are entitled to assert a claim for relief for Mayo and Medica's violation of their fiduciary duties under 29 U.S.C. § 1132(a)(3), including injunctive and declaratory relief, and seek their removal as breaching fiduciaries.

**COUNT V**

**Violation of Fiduciary Duties of Full and Fair Review and Request for Declaratory and Injunctive Relief**

**(On Behalf of the Class and Against Medica)**

158.  The General and Class Allegations are hereby repeated as if fully set forth herein.

159.  Medica functioned and continues to function as the "plan administrator," within the meaning of such term under ERISA, for Plaintiff and the Class.

160.  Plaintiff and the Class were entitled to receive a "full and fair review" of all Medica claims denied or partially approved (meaning they were effectively denied) and are entitled to assert a claim under 29 U.S.C. § 1132(a)(3) for failure to comply with these requirements.

161.  Although Medica was obligated to do so, it failed to provide a "full and fair review" of underpaid claims pursuant to 29 U.S.C. § 1133 (and the regulations promulgated thereunder) for Plaintiff and the Class by making out-of-network benefit reductions and adverse benefit determinations that are inconsistent with or unauthorized by the terms of the plans, failing to disclose the NNPRA Pricing Method Medica used to arrive at these inappropriate reductions and adverse benefit determinations.

162.  ERISA and its implementing regulations set forth minimum standards for claim procedures, appeals, notice to members and the like. In engaging in the conduct described herein, Medica failed to comply with ERISA, its regulations and federal common law that require a "full and fair review", failed to provide reasonable claims procedures, and failed to make necessary disclosures to its members.

163.  Plaintiff and the Class were denied the opportunity to properly appeal Medica's adverse benefit determinations as Medica concealed from Plaintiff and the

Class, as alleged supra and through the alleged conspiracy with Mayo, the requirement to exhaust internal appeals under ERISA should, therefore, be deemed to be futile and/or waived for all Plaintiffs and the Class.

164.    Plaintiff and the Class have been harmed by Medica's failure to provide a "full and fair review" of appeals under 29 U.S.C. § 1133, and by Medica's failure to disclose relevant information in violation of ERISA and the federal common law. Plaintiff and the Class are also entitled to a declaration by this Court that Medica's actions as alleged herein are in violation of its duties and obligations of ERISA and are entitled to injunctive and declaratory relief.

## COUNT VI

### Claim for Equitable Relief to Enjoin Acts and/or Practices
### (On Behalf of Plaintiff and the Class Against Mayo and Medica)

165.    The General and Class Allegations are hereby repeated as if fully set forth herein.

166.    Plaintiff brings this count of their own behalf, and on behalf of the putative class, pursuant to 29 U.S.C. § 1132(a)(3)(A) only to the extent that the Court finds that the injunctive relief sought to remedy Counts III through V are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

167.    Plaintiff and the Class have been harmed, and are likely to be harmed in the future, by Mayo and Medica's breaches of fiduciary duties described in the Allegations and in Counts III through V above.

168.    Additionally, incorporated into Mayo and Medica's fiduciary duties, is the duty to act at all times in good faith and to deal fairly with Plaintiff and the Class.

169.    Mayo's duties include, but are not limited to, the duty to act fairly, reasonably, and promptly in dealing with their insureds, their agents, and/or representatives for adjusting claims, investing claims handling and properly paying all claims that Mayo is obligated to pay.

170.    Medica's duties include, but are not limited to, the duty to act fairly, reasonably, and promptly in dealing with their insureds, their agents, and/or representatives for adjusting claims, investigating claims handling and properly paying all claims that Medica is obligated to pay.

171.    In order to remedy these harms, Plaintiffs and the Class are entitled to enjoin these acts and practices pursuant to 29 U.S.C. § 1132(a)(3)(A).

## COUNT VII

## Claim for Other Appropriate Equitable Relief

## (On Behalf of Plaintiff and the Class Against Mayo and Medica)

172.    The General and Class Allegations are hereby repeated as if fully set forth herein.

173.    Plaintiff brings this count of their own behalf and on behalf of the putative class, pursuant to 29 U.S.C. § 1132(a)(3)(B) only to the extent the Court finds that the equitable relief sought to remedy Counts III through VI are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

174.    The Plaintiff and the Class have paid and owe excessive balance bills as the result of Mayo and Medica's underpayment. The difference between the appropriate payment based on the NNPRA rate and the amount that Mayo and Medica actually paid is a clear benefit that Plaintiff and the Class have conferred upon Mayo and Medica because they paid monies out of their own pocket that Mayo and Medica were obligated to pay.

175.   Mayo and Medica retained this benefit failing to reimburse the over-payments made by Plaintiff and the Class.

176.    Plaintiff and the Class are owed payments from Mayo and Medica as Plaintiff and the Class were forced to pay their providers for Mayo and Medica's shortfall.

177.    Mayo and Medica has improperly retained the monies it should have paid for the claims at issue in this cause of action.

178.    It is inequitable to permit Mayo and Medica to retain these benefits.

179. As described in detail supra, the Plaintiff and the Class relied upon Mayo and Medica's assertion in the plan documents and reiterated during lengthy and comprehensive verification of benefits calls that out-of-network claims, when covered, would be paid at the NNPRA rate.

180. Coverage is not in dispute or at issue for these claims.

181. The payment rate of a claim is very material to a patient making decisions about where to seek treatment.

182. As to reasonable reliance, it is reasonable for Mayo and Medica's insureds to rely upon the representations Mayo and Medica makes in plan documents and that its agents make during the lengthy verification of benefits calls.

183. It is also reasonable for Mayo and Medica's insureds to rely upon the EOBs and other written correspondence that they received from and on behalf of Mayo and Medica.

184. It is also reasonable for Mayo and Medica's insureds to rely on the Medica Search Portal to determine whether in-network health services are available in their geographic area.

185. Detrimental reliance is clear, the Plaintiff and the Class relied upon Mayo and Medica's representations that reimbursement would be made at the NNPRA rate. Mayo and Medica's failure to reimburse at a disclosed NNPRA rate caused Plaintiff and the Class to spend their own money to make up for Mayo and Medica's underpayments.

186. Plaintiff and the Class also detrimentally relied on Medica's Search Portal identifying no health services in the geographic area before engaging out-of-network health services. Mayo and Medica then claimed that in-network providers were available and only reimbursed at NNPRA rates, leaving Plaintiff and the Class responsible for unreasonably large out-of-pocket expenses.

187. Plaintiffs and the Class have been harmed, and are likely to be harmed in the future, by Defendants' actions and are entitled to appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B).

**COMPLAINT**

# JURY TRIAL DEMAND

Plaintiffs, on their own behalf and on behalf of the Class, demand a jury trial for all claims so triable.

**WHEREFORE**, Plaintiff, on her own behalf and on behalf of the Class, pray for judgment against the Defendants as follows:

a. Certifying the Class and their claims, as set forth in this Complaint, for class treatment;

b. Appointing the Plaintiffs as Class Representatives for the Class;

c. Designating the law firm of McCune Law Group, as counsel for the Class;

d. For general, special, restitutionary and compensatory damages in an amount according to proof;

e. For treble damages for those claims arising under the Federal RICO Act;

f. For prejudgment interest on amounts benefits wrongfully withheld;

g. Injunctive and equitable relief enjoining Defendants from the conduct alleged herein and/or other appropriate equitable relief;

h. Injunctive relief allowing class members to change their current health plan if impacted by the inaccurate and undisclosed plan information;

i. Declaring that Medica's payments were improper underpayments;

j. Declaring that Medica's payment methodologies were and are improper;

k. Declaring that Mayo and Medica have engaged in an illegal, prohibited, RICO enterprise;

l. Ordering Medica to reprocess all underpaid claims using an appropriate methodology;

m. Ordering Mayo and Medica to provide transparency as to the methodology applied in reprocessing claims and that the methodology be approved by the Court;

n. For attorney's fees and costs pursuant to statute; and

o. For such other and further relief as the Court may deem appropriate, including but not limited to awarding a surcharge, disgorging Defendants unjust enrichments from their wrongful conduct.

Dated:  April 2, 2024,

**Joseph A. Larson Law Firm, PLLC**

*s/ Joseph A. Larson*

Bar No. 390522
Joseph A. Larson, Esq.
jlarson@joelarsonlaw.com
310 4th Avenue South, Suite 5010
Minneapolis, MN 55415
Telephone: (612) 206-3704
Facsimile: (612) 284-8716

Dana R. Vogel, Esq.*
drv@mccunewright.com
Christopher M. Sloot, Esq.*
cms@mccunewright.com
**McCune Law Group, McCune Wright Arevalo Vercoski Kusel Weck Brandt, APC**
2415 East Camelback Road, Suite 850
Phoenix, AZ 85016
Telephone: (520) 210-5558
Facsimile: (909) 557-1275

David C. Wright, Esq.*
dcw@mccunewright.com
**McCune Law Group, McCune Wright Arevalo Vercoski Kusel Weck Brandt, APC**
3281 East Guasti Road, Suite 100
Ontario, CA 91761

-34-
**COMPLAINT**

Telephone: (909) 479-2899
Facsimile: (909) 557-1275

*Attorneys for Plaintiff*
*\*Application for pro hac forthcoming*

**COMPLAINT**