UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Sherry M. Orrison, | File No. 24-CV-01124 (JMB/SGE) |
| Plaintiff, | |
| v. | **ORDER** |
| Mayo Clinic and MMSI, Inc., | |
| Defendants. | |

---

Joseph A. Larson, Joseph A. Larson Law Firm PLLC, Minneapolis, MN, and Christopher M. Sloot (*pro hac vice*), Dana Vogel (*pro hac vice*), and David Christopher Wright (*pro hac vice*), McCune Law Group, Phoenix, AZ, for Plaintiff Sherry M. Orrison.

Brock Huebner, Dorsey & Whitney LLP, Minneapolis, MN; Steven C. Kerbaugh, Saul Ewing LLP, Minneapolis, MN; Emily Seymour Costin (*pro hac vice*) and Margaret Ellen Saathoff (*pro hac vice*), Alston & Bird, Washington, D.C., for Defendant Mayo Clinic.

Alyssa Schaefer, Andrew J. Holly, and Brock Huebner, Dorsey & Whitney LLP, Minneapolis, MN, for Defendant MMSI, Inc.

---

This matter is before the Court on Defendants Mayo Clinic's (Mayo) and MMSI, Inc.'s (Medica) Motions to Dismiss Plaintiff Sherry Orrison's Amended Complaint. (Doc. Nos. 86, 92.) Orrison alleges that Mayo and Medica (together, Defendants) violated their obligations under ERISA and other federal laws in their administration of her health care plan. For the reasons explained below, the Court grants the Defendants' Motions to Dismiss in part and denies them in part.

1

## BACKGROUND

According to the First Amended Complaint (FAC), Sherry Orrison is an employee of the Mayo Clinic residing in Scottsdale, Arizona. (Doc. No. 78 [hereinafter, "FAC"] ¶ 10.) Mayo offers its employees a self-funded health care plan (the Plan). (*Id.* ¶ 17.) The Plan is governed by the Employee Retirement and Income Security Act of 1974 (ERISA). (*Id.*) Mayo served as Plan Administrator and Medica served as the Claims Administrator for the Plan during all times relevant to this action. (*Id.* ¶¶ 11–13, 19–20.)

Orrison's claims arise out of her experience trying to obtain mental health treatment for her teenage son, a beneficiary of the Plan. (*Id.* ¶ 63.) In 2019, Orrison sought mental health treatment for her son in or near their hometown of Scottsdale, Arizona. (*Id.* ¶ 64.) Orrison was directed by Plan documents to use an online search tool provided by Medica. (*Id.* ¶ 65.) Orrison alleges that Medica's search tool improperly omitted in-network providers, causing her to believe that there were no in-network providers when in fact there were in-network providers. (*Id.* ¶ 67.) Orrison states that this misrepresentation forced her to seek out-of-network providers for her son over the next several years, incurring significant healthcare costs.

Orrison also alleges that Defendants failed to disclose the information she sought regarding the reimbursement calculations for out-of-network providers. Orrison alleges that she repeatedly requested information as to how Defendants calculated their non-network provider reimbursement rate (NNPRA) so that she could anticipate the costs of reimbursement, but that Defendants refused to provide this information. (*Id.* ¶¶ 29–37.) Lastly, Orrison alleges that Defendants provided false and conflicting information as to her

satisfied amounts for her deductibles and out-of-pocket maximums, leaving her unaware as to whether she had met these thresholds for 2022 and 2023, and impeding her ability to make an adequately informed decision for the best plan for her family. (*Id.* ¶¶ 144–153.)

In her nine-count FAC, Orrison brings the following claims: violation of the Racketeering Influenced and Corrupt Organizations Act (RICO) (Count I); underpaid benefits (Count II); failure to provide accurate explanations of benefits (EOBs) (III); breach of fiduciary duties (Count IV); deprivation of a full and fair review (Count V); violation of the Mental Health Parity Act and Addiction Equity Act (Count VII); violation of the No Surprises Act (Count VIII); and additional claims for equitable relief (Counts VI, IX).

## DISCUSSION

Defendants move to dismiss all counts under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The Court grants the motion without prejudice in part, grants the motion with prejudice in part, and denies the motion in part.

As a threshold matter, the Court observes that when considering a motion to dismiss under Rule 12(b)(6), courts accept the facts alleged in the complaint as true. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, courts need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## I. RICO (COUNT I)

Defendants move to dismiss Count I, arguing that the allegations in the FAC are not sufficient to state a claim. The Court agrees.

A civil RICO claim represents "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). To bring a civil RICO claim, a plaintiff must allege that defendants engaged in one or more underlying racketeering activities, list in 18 U.S.C. § 1961(1) and including arson, robbery, extortion, various forms of fraud and trafficking of prohibited materials. 18 U.S.C. § 1961(1). In the FAC, Orrison identifies three predicate offenses: mail fraud (section 1341), wire fraud (section 1343), and "Heath Care Offenses" (sections 24, 1027, 1241 and 1343). When alleging fraud as a predicate act, a plaintiff must satisfy the heightened pleading standard articulated in Federal Rule of Civil Procedure 9(b) (requiring that the pleading "state with particularity the circumstances constituting fraud or mistake"). *See Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075–76 (8th Cir. 2018) (requiring RICO plaintiffs alleging fraud to meet the particularity requirement imposed by Rule 9(b)); *Crest Const. II*, 660 F.3d at 353 (affirming grant of defendants' motion to dismiss because the complaint failed to set forth facts detailing the "who, what, when, and how" of the alleged fraud scheme as required by Rule 9(b)).

The Court first concludes that the "Health Care Offenses" cannot sustain a RICO claim because they are not listed as predicate offenses. *See* 18 U.S.C. § 1961(1); *RJ v.*

4

*Cigna Behav. Health, Inc.*, No. 5:20-CV-02255-EJD, 2021 WL 1110261, at *8 (N.D. Cal. Mar. 23, 2021) ("Federal Health offenses . . . are not among the statutory list of predicate acts that can constitute racketeering."); *LD v. United Behav. Health*, No. 4:20-CV-02254 YGR, 2020 WL 5074195, at *9 (N.D. Cal. Aug. 26, 2020) ("The alleged 'Federal Health offenses' cannot serve as predicates for a RICO claim because they are not listed in 18 U.S.C. § 1961(1).").

Turning to Orrison's allegations of mail and wire fraud, the Court determines that these allegations are not sufficient to satisfy Rule 9(b). "When pled as RICO predicate acts, mail and wire fraud require a showing of the following four elements: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *H & Q Properties, Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015). Facts can establish the second element if those facts show an "avowed intent to bilk members of the public," or, at a minimum, a "reckless[] disregard[ as to] whether [the defendants'] representations [we]re true." *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 768 (8th Cir. 1992).

Here, the FAC mostly consists of conclusory assertions, such as the unspecified statement that Defendants engaged in "countless and nearly constant acts of mail and wire fraud." (FAC ¶ 193). When Orrison's conclusory statements are appropriately set aside, *Crest Const. II*, 660 F.3d at 357, the factual allegations that remain are: (1) Defendants' provider search tool showed no local in-network providers when in fact there were local in-network providers (FAC ¶¶ 55–62, 80, 84–85); (2) the EOBs did not explain how the reimbursement rates were calculated (*id.* ¶¶ 126–130); and (3) the patient portals contained

5

conflicting tallies of the satisfied deductible amounts for 2022 and 2023 (*id.* ¶¶ 147–148). These factual assertions, even if true, do not allege intent with particularity. The FAC contains no facts which would permit the Court to draw a reasonable inference that either Defendant acted with a "reckless disregard" as to the veracity of its statements. *Kolber*, 960 F.2d at 768. Without more, these allegations, even if true, do not adequately plead the presence of an underlying predicate offense.

Therefore, the Court dismisses Count I without prejudice. *See Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008) (explaining that "[f]ailure to present sufficient evidence on any one element of a RICO claim means the entire claim fails").[1]

## II.  UNDERPAID BENEFITS (COUNT II)

Defendants also move to dismiss Orrison's ERISA claim under 29 U.S.C. § 1132(a)(1)(B) for underpaid benefits, arguing that this Count must be dismissed because the FAC does not identify any provision within the plan that Defendants have violated. Again, the Court agrees.

An ERISA plan participant may bring a civil action under this subsection "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29

---

[1] The Court is also concerned that the allegations in the FAC are also insufficient to satisfy Rule 9 concerning the other elements of a civil RICO claim. For instance, the FAC includes few, if any, allegations to establish that Defendants have formed an enterprise under RICO or to permit the inference that Defendants engaged in a pattern of racketeering activity. However, given the Court's decision concerning the inadequate allegations of Defendants' intent to defraud, the Court need not address these other elements of the claim.

U.S.C. § 1132(a)(1)(B).  Claims under section 1132(a)(1)(B) may only be used to allege a violation of the terms of an ERISA-governed plan itself.  *See Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 545 (8th Cir. 2017).

Here, however, the allegations in the FAC fail to identify any term of the Plan which was allegedly violated.  Rather, Orrison's allegations concern the "misuse of NNPRA Pricing Methods" (FAC ¶ 206); failure to "comply with applicable state laws" (*id.* ¶ 209); and Defendants' violation of obligations by engaging in conduct that "discouraged or penalized its members' use of out-of-network providers" (*id.* ¶ 211).  None of these allegations supports a claim under § 1132(a)(1)(B), and the Court also dismisses Count II without prejudice.

### III.   BREACH OF FIDUCIARY DUTIES (COUNT IV)

Defendants also move to dismiss Orrison's claims under Count IV, alleging a breach of Defendants' fiduciary duties. Because the FAC contains sufficient allegations to support a claim that Defendants breached a fiduciary duty when they failed to inform Orrison of material information, including NNPRA pricing methods and methodology used to calculate reimbursement rates, the Court denies the motion to dismiss Count IV, to the extent that Count IV is based on this theory of breach.[2]

---

[2] Orrison raises two other theories of breach, but the FAC contains insufficient allegations to support either of these two theories.  First, Orrison asserts that Defendants made out-of-network benefit reductions and adverse benefit determinations unauthorized by the terms of the Plan.  (FAC ¶¶ 227–232.)  For reasons described in Section II, supra, Orrison has failed to allege that either Defendant violated the terms of the Plan.  Thus, there can be no fiduciary breach for imposing reductions unauthorized by the terms of the Plan.  Second, Orrison alleges that her satisfied amounts and out-of-pocket maximums were tallied differently on the Medica Member Portal and Medica's internal Health Rules System,

7

In order to state an ERISA claim for breach of fiduciary duty, a plaintiff must make a prima facie showing of the following three elements: (1) the defendant acted as a fiduciary; (2) the defendant breached its fiduciary duties; and (3) the plaintiff was injured by the breach. *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000); *see also Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 793 (D. Minn. 2018). The parties contest only whether the FAC contains sufficient allegations to establish the second element.[3] In addition, the Eighth Circuit has explained that the pleading standards for ERISA plaintiffs bringing

---

leaving her unaware as to whether she and her family had met their totals for the year and preventing her from making adequately informed decisions as to the best health plan for future years. (FAC ¶¶ 144–152, 230.) The FAC, however, only asserts a discrepancy. It fails to identify which of the conflicting sums was allegedly incorrect and which was correct. This missing information prevents the Court from assessing which, if either, Defendant was acting in a fiduciary capacity, and it also prevents the Court from assessing the materiality of the allegedly misleading statement. *See Boyd v. ConAgra Foods, Inc.*, 879 F.3d 314, 322 (8th Cir. 2018) (requiring plaintiffs to show the existence of a misleading statement or omission, the materiality of the misleading statement or omission, and reasonable and detrimental reliance on the misleading statement or omission.) Here, the FAC does not identify the misleading statement at all. Therefore, Orrison's claim of fiduciary breach under this theory is unavailing.

[3] Under ERISA, an entity occupies a fiduciary status to the extent that it "exercises any authority or control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). In the context of Orrison's plan, Mayo acted as plan administrator, and Medica acted as claims administrator. Plan administrators generally make "'plan-level decisions about covering employees (e.g., whether employee *x* will be covered at all—for *anything*—under the policy),'" while claims administrators make "claim-level decisions about paying benefits (e.g., to what extent employee *x*'s visit to doctor *y* on date *z* is covered)." *Slayhi v. High-Tech Institute, Inc.*, No. 06-CV-2210 (PJS/JJG), 2007 WL 4284859, *3, *7 (D. Minn. Dec. 3, 2007). As both roles require the entities to exercise discretion in their decision-making responsibilities, both can perform fiduciary roles under ERISA. *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996); *Wrenn v. Principal Life Ins. Co.*, 636 F.3d 921, 924 (8th Cir. 2011); *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1346 (8th Cir. 1991).

claims of fiduciary breach need not be overly stringent, for "[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences," and thus, if "plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).

The FAC alleges that Defendants breached their fiduciary duties of loyalty and due care. Under the duty of loyalty, an ERISA fiduciary must discharge its plan administration duties for the exclusive purpose of providing benefits and defraying reasonable expenses. 29 U.S.C. § 1104(a)(1)(A). To satisfy its duty of due care, an ERISA fiduciary must act "with the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). An ERISA fiduciary's duty of loyalty includes the "obligation to deal fairly and honestly with all plan members." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007). Making materially misleading statements constitutes a breach a fiduciary's duty of prudence and loyalty. *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1025 (8th Cir. 2022). "A statement is materially misleading if there is 'a substantial likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled.'" *Kalda*, 481 F.3d at 644 (quoting *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 551 (6th Cir. 1999)). Materiality is generally a fact-intensive issue, and courts typically do not resolve such issues at the motion to dismiss phase. *Braden*, 588 F.3d at 598. Additionally, to succeed in its claim,

9

a plaintiff must show not only the existence of a materially misleading statement, but that they must also demonstrate that they reasonably and detrimentally relied on the material misrepresentation or omission. *Boyd*, 879 F.3d at 322.

Orrison alleges that Defendants breached their fiduciary duties through their refusal to disclose the Plan's NNPRA pricing method, which prevented her from making an informed decision as to the best coverage plan for her and her family. (FAC ¶¶ 114, 118, 139, 231–32.) In particular, Orrison alleges that the EOBs she received from Medica failed to identify the NNPRA pricing method used, how the NNPRA calculation was conducted, and why a particular NNPRA pricing method was utilized. (FAC ¶ 172.) Orrison also details several efforts she made to request specific information as to how out-of-network expenditures were credited towards her deductible so that she could make an adequately informed decision as to which plan was best for her and her family. (FAC ¶¶ 111–116.) Orrison alleges that representatives from both Defendants refused to supply this information upon her request, telling her only that the allowed amounts were "negotiated on a claim-by-claim basis" and could "fluctuate throughout the year for the same provider and the same service." (*Id.* ¶¶ 34, 48, 87, 90, 103, 104, 108, 109, 113–114.) Thus, Orrison alleges that she was unable to anticipate the portion of her out-of-pocket expenses that would be credited towards her deductible and thereby unable to make informed decisions as to her benefits under the plan. These allegations are sufficient to plead a claim of breach of fiduciary duty as to both Defendants based on the lack of disclosure of NNPRA pricing

methods and methodology used to calculate reimbursement rates.[4]

## IV. FULL AND FAIR REVIEW (COUNT V)

Defendants also move to dismiss Orrison's claims for deprivation of a full and fair review under section 1133. The Court concludes that the allegations in the FAC are sufficient to state a claim for deprivation of a full and fair review.

Under section 1133, a plan must set forth in writing its "specific reasons" for a denial of benefits and must afford participants the opportunity for a full and fair review by the appropriate fiduciary of a claim denial decision. 29 U.S.C. § 1133. Relevant regulations further provide that, upon request, the plan must provide claimants "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). Documents are relevant if they were relied upon in making benefit determinations or considered, submitted, or generated in the course of making benefits determinations. 29 C.F.R. § 2560.503-1(m)(8). *See also Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 894 (8th Cir.

---

[4] Defendants make two arguments to persuade the Court to reach the contrary conclusion. Neither argument has merit. First, Defendants argue that Orrison's claims for fiduciary breach are improperly duplicative of her claims for withheld benefits. However, Orrison's allegations regarding failure to disclose NNPRA calculation methods are not duplicative. Second, Defendants argue that Orrison has failed to identify a statutory section compelling them to disclose the NNPRA method. Contrary to this argument, ERISA does not limit a fiduciary's disclosure duties to terms expressly set forth in the statute. Indeed, withholding material information can be a violation of this discretionary duty, even if no other law compels its disclosure. *See Varity Corp. v. Howe*, 516 U.S. 489, 504 (1996) (explaining that "the primary function of the fiduciary duty is to constrain the exercise of *discretionary* powers which are controlled by no other specific duty imposed by the trust instrument or the legal regime").

2009) ("[F]ollowing an initial denial of a claim for benefits, § 2560.503-1(h)(2)(iii) entitles a claimant to review the materials relevant to his or her claim.").

The Act and its regulations "establish extensive requirements to ensure full and fair review of benefit denials." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 220 (2004) (citing 29 C.F.R. § 2560.503–1). These regulations set forth the "minimum requirements for employee benefit plan procedures pertaining to claims for benefits." *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1086 (8th Cir. 2009) (quotation omitted). A plan's failure to provide a basis for allowed amount calculations violates full and fair review. *E.g.*, *Doe v. Oxford Health Plans Inc.*, No. 24-CV-5922 (LJL), 2025 WL 1105287, at *10 (S.D.N.Y. Apr. 14, 2025); *Bio-Med. Applications of Kentucky, Inc. v. Coal Exclusive Co., LLC*, 782 F. Supp. 2d 438, 448 (E.D. Ky. 2011) (remanding to allow for full and fair review, and ordering plan administrator to provide plaintiff "with the precise methodology and information used to determine" the allowed amount of determinations at issue).[5]

Defendants argue that the FAC fails to state a claim under section 1133 because there are no allegations that Orrison made a specific request for NNPRA pricing methods.

---

[5] The remedy for violations of section 1133 is generally limited to procedural remedy only. *Smith v. UnitedHealth Grp. Inc.*, No. 22-CV-1658 (NEB/DJF), 2023 WL 3855425, at *10 (D. Minn. May 4, 2023), *aff'd*, 106 F.4th 809 (8th Cir. 2024); *see also Brown*, 586 F.3d at 1087; *Lafleur v. Louisiana Health Service and Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009) (concluding a remand to the plan administrator is "usually the appropriate remedy"); *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) (same). In addition, to the extent that Orrison brings this claim under ERISA's "catch-all" provision, 29 U.S.C. 1132(a)(3), courts generally only grant equitable relief for such actions. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 (2002); *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578-79 (2d Cir. 2006).

(Doc. No. 88 at 47–48; Doc. No. 94 at 50.) [6] Although the FAC does not include an allegation that Orrison use the phrase "non-network provider reimbursement rate" in her requests for explanation as to the out-of-network coverage calculations, the FAC details Orrison's numerous efforts to receive material information as to how the allowed amounts were determined, so that she could predict what the coverage was likely to be. (*See, e.g.*, FAC ¶¶ 34, 48, 87, 90, 103, 104, 108, 109, 113, 115–116.) On November 2, 2022, Orrison called Medica's customer service hotline to request information as to Medica's calculation for her benefits and deductibles, but she was not provided with the information she requested. (*Id.* ¶ 87.) On December 5, 2022, Orrison alleges that she contacted Mayo HR to provide an explanation as to her open Medica claims, but was provided no additional information as to how the benefits calculation and decision was made. (*Id.* ¶¶ 103–104.) Indeed, the only information Orrison received from Mayo regarding the reimbursement calculations was that the allowed amounts were "negotiated on a claim-by-claim basis" and would "fluctuate throughout the year for the same provider and service." (*Id.* ¶ 114.) Nor were the NNPRA pricing methods included on the EOBs Orrison received from Medica. (*Id.* ¶ 126.) Medica's benefits information did not shine any additional light upon the means or method by which the allowed amount would be calculated; it provided five criteria upon which the reimbursement amount would be calculated, including the vague

---

[6] Mayo's additional argument that it should be dismissed from this count because Orrison has not alleged any actions by Mayo in denying a full and fair review is unpersuasive. Orrison's allegations contain several incidents in which she requested documents from Mayo related to benefits calculations and reimbursements and was denied this information. (*See* FAC ¶¶ 106, 108, 114.)

categories of "a percentage of the provider's billed charge" or "an amount agreed upon" by Medica and the provider. (*Id.* ¶ 31.) These allegations are sufficient to survive a motion to dismiss.[7]

## V. MENTAL HEALTH PARITY ACT AND ADDICTION EQUITY ACT (COUNT VII)

Defendants both move to dismiss Orrison's claims under the Parity Act, arguing that the factual allegations in the FAC are insufficient to state a claim. The Court agrees.

The Parity Act and its implementing regulations prohibit plans from imposing more restrictive limitations on a mental health benefit than a medical or surgical benefit within the same classification treatment limitations governing mental health benefits. *See* 29 U.S.C. § 1185a; 29 C.F.R. § 2590.712(c)(2)(ii); *Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 827–28 (N.D. Ill. 2019). The act requires parity in both quantitative and nonquantitative treatment limitations. *See* 29 C.F.R. § 2590.712(c)(4)(i). Quantitative

---

[7] Defendants separately argue that, based on the holding in *McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 09-CV-571 (SRC), 2011 WL 4455994, at *6 (D.N.J. Sept. 23, 2011), an insurer's refusal to disclose its "methodology or source of data used" in determining the rate of reimbursement is not sufficient to state a claim under section 1133. *McDonough*, however, does not stand for the proposition that plaintiffs cannot state a claim under section 1133 based on an insurer's refusal to disclose pricing methodology. Rather, *McDonough* is more limited, and the court in that case rejected the argument that ERISA required insurers to "provide every bit of data underlying a claim decision and details about the way in which that data was used." *Id.* In this way, *McDonough* acknowledges an outer limit on the disclosure requirements under section 1133. Here, Orrison's requests do not approach the outer limit addressed in *McDonough*; Orrison did not request "every bit of data," but instead requested a general explanation as to the criteria used to calculate the NNPRA consistent with the obligations acknowledged in other cases. *See, e.g.*, *Doe*, No. 24-CV-5922 (LJL), 2025 WL 1105287, at *10; *Bio-Med. Applications*, 782 F. Supp. 2d at 448.

treatment limitations refer to limitations which are expressed numerically (such as a limit of fifty outpatient visits per year). 29 C.F.R. § 2590.712. Nonquantitative limitations (NQTLs) are plan limitations that "contribute to material differences in access to mental health and substance use disorder benefits as compared to medical [and] surgical benefits." *Id.* The regulations provide a non-exhaustive list of such NQTLs, including: (1) "network tier design" (for plans with "multiple network tiers," such as "preferred providers and participating providers"); (2) standards for provider admission to participate in a network, including reimbursement rates; (3) plan methods for determining usual, customary, and reasonable charges; and (4) "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(c)(4)(ii). Other actionable NQTLs include disparities between in- and out-of-network utilization rates and "network adequacy." 29 C.F.R. § 2590.712(c)(4)(iii).

Here, the FAC includes general allegations that "Defendants violated [the Parity Act] with respect to both quantitative treatment limitations and non-quantitative treatment limitations," because of a "disparate number of inpatient, in-network, and outpatient, in network, Tier 1 mental health and substance use treatment providers." (FAC ¶ 251–53.) Orrison identifies no provision within the Plan which provides different criteria utilized to determine coverage, nor does she identify any mental health claim which was treated differently than a medical or surgical claim. These "threadbare" allegations, without more,

15

are insufficient. *See Iqbal*, 556 U.S. at 678.[8]  Therefore, the Court grants Defendants' motions and dismisses Count VII of the FAC without prejudice.

## VI.   NO SUPRISES ACT (COUNT VIII)

The No Suprises Act (NSA) imposes various requirements upon group health plans to ensure the accuracy of the claims disclosures and information, including requirements regarding verification processes, response protocols, and the provision of an accurate provider database. 29 U.S.C. § 1185i(a)(2), (3), (4). Orrison alleges that Defendants have violated all three of the above-cited requirements. (FAC ¶¶ 256—66.) Defendants move to dismiss on the grounds that Orrison has not pled a plausible violation of any provision of the NSA. The Court agrees with Defendants that Orrison has failed to allege a violation of sections 1185i(a)(2) and 1185i(a)(3) because the FAC contains only conclusory statements asserting violations of Mayo's and Medica's alleged deficiencies in their verification and response processes. However, the factual allegations in the FAC are sufficient to state a claim for relief that Defendants violated section 1185i(a)(4).

Section 1185i(a)(4) provides, among other requirements, that, for plan years beginning on or after January 1, 2022, group health plans must establish a publicly accessible database containing "a list of each health care provider and health care facility with which such plan or such issuer has a direct or indirect contractual relationship for furnishing items and services . . . and . . . provider directory information with respect to

---

[8] In her brief, Orrison alleges additional facts concerning this claim that are not included in the FAC. The Court declines to consider these allegations because "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quotation omitted).

16

each such provider and facility." 29 U.S.C. § 1185i(a)(4). The FAC includes allegations that between 2019 and 2023, Defendants failed to maintain the required database and directory. (FAC ¶ 67.) In particular, the FAC contains allegations that the provider search tool administered by Medica (and sponsored by Mayo) inaccurately omitted the in-network providers within fifty miles of her home, forcing Orrison to utilize out-of-network providers based on the erroneous representation that there were no in-network providers. (*Id.* ¶¶ 65–85.) These allegations are sufficient to state a claim for violating the database requirement of the NSA.

Defendants' argument concerning the database requirement does not directly concern the adequacy of these allegations. Instead, Defendants argue that the NSA only extends to instances in which an out-of-network provider was inaccurately presented as an in-network provider, and Orrison's allegations go the other way—Orrison alleges that she was improperly informed that there were no in-network providers when in fact there were. (Doc. No. 88 at 54; Doc. No. 94 at 58.) This argument fails to convince the Court to dismiss Orrison's claim because the plain text of the statute requires group health plans to maintain a comprehensive database of health care providers and facilities with which the plan or issue has contractual relationships for furnishing items and services under the covered plan; the statute makes no distinction for databases that are underinclusive rather than overinclusive. *See generally* 29 U.S.C. § 1185i(a). Defendants cite to no binding legal

17

authority, and the Court is aware of none, that interpret the NSA as limited to claims that a plan maintained an inaccurately overinclusive database.[9]

### VII.  ORRISON'S REMAINING CLAIMS (COUNTS III, VI, and IX)

Orrison brings additional claims for equitable relief under Counts III, VI, and IX. Defendants moved to dismiss Count III for failure to state a claim, and to dismiss Counts VI and IX as duplicative of her other claims.  (Doc. No. 88 at 41–46, 49–50; Doc. No. 94 at 42–44, 50–52.)  Orrison did not respond in her opposition brief to Defendants' motions to dismiss Counts III, VI, and IX.  (*See generally* Doc. No. 102.)  Thus, the Court concludes that these claims have been waived, and the Court dismisses Counts III, VI, and IX with prejudice.  *See In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d 868, 878 (D. Minn. 2018), *aff'd sub nom. Allen v. Wells Fargo & Co.*, 967 F.3d 767 (8th Cir. 2020).

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendant Mayo Clinic's Motion to Dismiss the FAC (Doc. No. 92) and Defendant MMSI, Inc's Motion to Dismiss the FAC (Doc. No. 86) are GRANTED IN PART AND DENIED IN PART as follows:

1. Counts III, VI, and IX are DISMISSED WITH PREJUDICE.

2. Counts I, II, and VII are DISMISSED WITHOUT PREJUDICE;

---

[9] Again, courts are generally limited to awarding equitable relief when plaintiffs bring claims under 29 U.S.C. § 1132(a)(3).  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 724 (8th Cir. 2014).  In addition, the available relief is limited in time because the NSA did not take effect until January 1, 2022, and the FAC contends that the database was accurate as of March 31, 2023 (FAC ¶ 85).

3. The portion of Count IV asserting that Defendants breached their fiduciary duty by making out-of-network benefit reductions and adverse benefit determinations unauthorized by the terms of the Plan is DISMISSED WITHOUT PREJUDICE;

4. The portion of Count IV asserting that Defendants breached their fiduciary duty by treating satisfied amounts and out-of-pocket maximums differently on the Medica Member Portal and Medica's internal Health Rules System is DISMISSED WITHOUT PREJUDICE;

5. Defendants' Motions regarding the portion of Count IV asserting that Defendants breached their fiduciary duty by failing to disclose NNPRA pricing methods and methodology used to calculate reimbursement rates are DENIED.

6. Defendants' Motions regarding Count V are DENIED.

7. The portions of Count VIII asserting that Defendants' violated U.S.C. §§ 1185i(a)(2) and (3) are DISMISSED WITHOUT PREJUDICE.

8. Defendants' Motions regarding the portion of Count VIII asserting that Defendants violated 29 U.S.C. § 1185i(a)(4) are DENIED.

Dated: September 19, 2025

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court